Please call the next case. Our next case is 4-14-0-6-5-5-W-C. William Allen v. Freeman United Coal Mining Company. Story. Council, you may proceed. You may proceed. Please the court. Mr. Wurtz, my name is Bruce Versoie and I represent William Allen. The arbitrator denied this claim, finding that the petitioner failed to prove an occupational disease arising from his employment. The commission adopted the arbitrator decision in its entirety. The circuit court confirmed and Mr. Allen's appeal to this court. Two diseases on the table are co-workers' pneumoconiosis and chronic bronchitis. Petitioner believes he proved that he has co-workers' pneumoconiosis. However, petitioner will abandon the co-workers' pneumoconiosis claim this morning for two reasons. First, while I believe the evidence of the commission was wrong, there is evidence in the record to support his findings. And we will not ask this court to reweigh that evidence. Namely Meyer and Rosenberg, right? Pardon me? Namely the testimony of Meyer and Rosenberg, that he didn't have it. There is testimony that, right, yes. I mean, to support the record. That's why you're abandoning it. Yes. Now, there are a couple reasons that we're abandoning that, besides the fact we don't want you to reweigh that evidence. And that's because whether petitioner proved both pneumoconiosis and chronic bronchitis, or whether he proved just chronic bronchitis, or just pneumoconiosis, the award should be the same. This isn't a case of total disability or a wage differential. Either pneumoconiosis or chronic bronchitis result in impairment of function and a medical preclusion from returning to coal mine. So we're sticking with the chronic bronchitis. Now, as to that chronic bronchitis, the arbitrator's decision was confusing. The reasons are, it has no basis. It should be reversed. The reasons are two. First, there's no requirement of black sputum to have chronic bronchitis. And second, Dr. Rosenberg's opinion that there was no chronic bronchitis was based on a feeling. And that isn't a sufficient basis for an opinion. The primary reason, in fact, the only stated reason that the arbitrator denied the claim, is that none of the treatment records had any notation that petitioner had black sputum. Sputum is black in color. And this raises a couple of questions. Did the arbitrator not find chronic bronchitis at all? Or did he find chronic bronchitis, but not related to mining because there was no black sputum in the records? If he didn't find chronic bronchitis, there wouldn't have been any reason to talk about whether the non-qualifying sputum was black. There isn't any logical basis for the arbitrator to make the main point of his conclusions of law the color of the sputum, unless that was the fact that determined the case. And there's no testimony in this record whatsoever that requires a miner to have black sputum for his chronic bronchitis to have been caused or aggravated by coal mining. In fact, there's no medical testimony whatsoever in this record that goes to the color of the sputum for chronic bronchitis. The color of the sputum had to have something to do with the arbitrator's decision, but I can't make any sense of it. It's only common sense that an underground coal miner, while he's coal mining, will have black sputum. It's also common sense that the color of the sputum may change if he's in the throes of an upper respiratory infection. It's also common sense. When was the first time he was diagnosed with chronic bronchitis? The first diagnosis, November of 2007? The first time that the diagnosis was made was Dr. Cohen. 2007? Yes. November? Prior to that, was he actually examined 20 occasions when there was nothing, but there was no finding of bronchitis, but rather diagnosed with sinus infections and the like? There was, I think that the question you're getting to is the entries of cough in the record and what are treating doctors in small towns do with cough? I grew up on a farm, and I remember when I was just a very young guy, there were certain things you looked forward to so you could be a man. One was when you were hauling in the hay. They had those rectangular bales there. When you were a man, you got to use a hay hook. Until then, you didn't. You also, when you were a man, you chewed tobacco. You didn't when you were a kid. Red man, I think. Yes, you were lucky. Been there and done that. The other thing was that when you were a man, you coughed up big hawkers all the time, and when you were a kid, you couldn't, and that was a good thing, but we didn't know that. We looked forward to that. When we grew up, we were going to be able to use that hay hook. We were going to be men. We were going to be able to cough those big hawkers, and so we looked forward to that, and that was stupid, and the men that coughed them up, they didn't go to the doctor for them. They thought that's what you did every day. So, let me ask you this, though, Mr. Wessore. I mean, set aside the black sputum, okay? The commission found that Dr. Rosenberg's opinions were more credible than Dr. Cohen's. They made that specific finding, and Dr. Rosenberg said, based on the medical records, the claimant suffered from intermittent respiratory tract infections, that there was no evidence of chronic bronchitis. He had acute bronchitis, or acute things, and the commission believed that, okay? So, why is that finding by the commission against the manifesto? It goes back to the one, I have to find, to answer that question, and to prevail today, I have to find the basis of Dr. Rosenberg's opinion. If that basis rests on no scientific fact, if it's nothing but speculation, then his opinion is no good, and the opinion of the decision of the commission should be overturned, and that's where I'm going. The basis of Dr. Rosenberg's opinion was his feeling that if this man truly had chronic bronchitis, he'd have gone to the doctor about it. Well, what about Justice Hoffman's question? He alluded to a nine-year period where he was examined nine times for coughs, respiratory infections. He was found to have clear lungs in at least 20 examinations. Is that not true? Sure. Well, isn't that more than just the subjective opinion of Rosenberg? The definition of chronic bronchitis is productive cough three months of the year, not particularly consecutively, most days of the week, in two consecutive years. That's all it is. This isn't a cough every day. These people don't go to the doctor every day. When they go to the doctor, what do they talk about? When they talk to the doctor, what does he write down? In fact, I'll go to what Dr. Rosenberg said about chronic bronchitis. He testified that obstructive lung disease, including chronic bronchitis, can be multifactorial in etiology, that a petitioner had sufficient coal mine dust exposure to cause chronic bronchitis, that a person can have chronic bronchitis caused by both smoking and mining, that if a person leaves the mine with chronic bronchitis and he continues to smoke, the smoke is not going to cure the chronic bronchitis caused by mining, and that coal mine dust can cause a clinical picture that's indistinguishable from cigarette smoke-induced COPD. He also said that chronic bronchitis can be aggravated by coal dust even if it was caused by smoking. Now, he also said these things about the inaccuracy of treatment records for chronic bronchitis. This is what Dr. Rosenberg said. He said it's possible that there may be periods of time that the patient doesn't go to the doctor at all, so there wouldn't be any documentation of cough, but that doesn't mean he didn't have cough. That's what Dr. Rosenberg said. He said that not everybody goes to the doctor when they should. That's what I was talking about. He said if a person goes to the doctor for some other reason, the doctor may not put down that there is cough,  Now, clearly, if the commission had decided in favor of the petitioner, these would all be good reasons to support their decision, but the fact of the matter is they didn't. And Rosenberg, he did testify that the claimant suffered intermittently from respiratory tract infections, and that he also said that there was no pulmonary cause for his shortness of breath, and that he opined that the claimant didn't have a chronic respiratory condition or impairment related to his employment in a coma. Now, Rosenberg said all that. Now, if the commission didn't want to believe him, they didn't have to, but they did. And so now the question becomes, in the face of that testimony from Rosenberg, why is their decision contrary to the manifest way of the evidence? I don't think that they can accept Dr. Rosenberg if Dr. Rosenberg was clearly wrong on the facts. I don't think they can accept Dr. Rosenberg if Dr. Rosenberg's opinion is based on conjecture and mere speculation. All right, so you're saying there was no, in your opinion, no evidentiary basis to support Rosenberg. That's correct, and all these things I was just saying, Dr. Rosenberg himself was taking apart the fact that the medical records aren't going to be able to tell you whether he's got chronic bronchitis. Now, what you can do is take that patient history, and here's another interesting part of the case. I'm sorry to interrupt you, Mr. Sorb. However, he can base an opinion on the medical records, can't he? He could base a medical opinion on those records. Of course, he was wrong on what he said the medical records contained. I mean, Dr. Wilson versus Clark, those medical records are the types of things that physicians reasonably rely upon to make decisions. I believe. And I mean, you know, he said all the things you said, you know, but then he said that having reviewed these medical records, in my opinion, he didn't have chronic bronchitis. Here's exactly what he said. My feeling, it's a feeling, would be that if he truly had chronic bronchitis, it would have been bothering enough that he'd go to the doctor more frequently than every four or five years. Well, that is absolutely wrong. He did go to the doctor more than every four or five years. The records from Illinois Medical show visits with entries of cough in 2008, 2007, 2006, 2004, 2002, 2000. Was Dr. Rosenberg exaggerating? Was he wrong? Did he not know? Now, these are, whether it prevails in this case or not, these are the only things that a petitioner can rely on. The truth. What's in those facts? And in this case, it started out with Dr. Cohen and Dr. Klapp having a patient history. They're trained to do this. They ask the right questions for chronic bronchitis. We don't know that those treaters did. But after a respondent knew that chronic bronchitis was on the table, it did not have Dr. Rosenberg perform an exam. He had no patient history. He had to be, he never saw the man. He never talked to him. He asked no questions. He didn't ask, he didn't know what questions the treaters asked. He just had this feeling. And I think it's wrong for the respondent to be able to keep the court from having a patient history by Dr. Rosenberg that could have balanced off the patient history taken by Klapp and Cohen. So whether it's prevailing or not, my opinion, what I'm telling you, that even if feelings were a sufficient basis for an opinion on what would deny a claim, the feeling should at least be based on some first-hand knowledge this guy has. And he could have had it. They have a right for that exam. But as it stands, he'd have to be more than a mind reader. He'd have to be clairvoyant. He never saw this guy. He didn't know who the treaters were. He didn't, as he said, he didn't know why they went there. He didn't know whether or not he complained every time. And there's a third reason, and it has to do with the definition of chronic bronchitis. It's a mathematical reason. It's mathematically impossible for these records to disprove chronic bronchitis. Again, the definition, cough with sputum, most days of the week, three months of the year, two consecutive years. Now, you take that flexible template, and you can overlay it on these treatment records 15, 20 times and have chronic bronchitis. But it doesn't show up in those records. Why? Because he didn't go to the doctor. It's like, I don't know if any of you are dove hunters, but you swing that shotgun, and you shoot the dove, and you hit him. You know you hit him, except for one thing. He flew through the pattern. Well, that can happen here, too. It's mathematically impossible for these records to disprove chronic bronchitis. So can the commission accept facts that aren't right? I don't think so. Can they accept feelings when they have on the table the opinions of the man who is the medical director of all the nation's black lung clinics, who took the exam, ask those questions? I don't think in a fair situation it can. Now, fair is a different word, isn't it? It's different than what you have to decide. But it is one reason I come to this court. Fairness is relative to which way the pendulum is swinging at any given point in time? Pardon me? I think fairness is relative to which way the pendulum is swinging at any point in time? I worked at a college for 40 years, and I taught a lot of courses that had to do with the law. And I always told my students, I'd say at the beginning of the class, if you go to the court seeking, they'd never let me down. Some would say, justice! No! You go to the court seeking a decision. You're going to get that, whether you get justice or not. And I suspect you'll get a decision most of the time. So my argument is that a feeling is not enough. Thank you. Thank you, counsel. Counsel, you may respond. Mr. Wirtz, are you here seeking fairness? Yes. Or just a decision? Yes. Yes to everything. Can you go right to the point? I sure will. Which is? I sure will. Now I'd like to talk about a point that we haven't really talked about, but it's a manifest way question. Dr. Rosenberg did not examine this gentleman, that's true. And the reason why I didn't have an examination done is I usually don't in these cases. That doesn't matter. We've got the record as it exists now. Right. Rosenberg didn't examine the patient. Right. Now, opposing counsel is saying he's making a feeling opinion, but even further than that, if you look at what the records show that he interpreted, that it doesn't support the absence of chronic bronchitis. Is that a fair statement? That's a fair statement as to his argument. To his argument. Oh, that's right. To his argument. So that's why I guess I'm saying focus on why he's not correct. Well, my response would be that between 2002 and 2008, he was diagnosed by these physicians having clear lungs. Right. Well, that and actually it's 2009. That's when Dr. Cohen or Dr. Bob. Was there a diagnosis of chronic bronchitis in January of 2008 or was it 2009? It's 2009. 2009. The diagnosis of chronic bronchitis came from the examining physician in this case. And my response to you is that I was not at all trying to keep any evidence from the commission or the arbitrator. I'm the one that put in the treatment records of this gentleman so that they could see what they revealed. And nowhere in the treatment records is there ever a diagnosis of chronic bronchitis made. And I think a fair inference from that is that it wasn't made because the patient gave an insufficient history of cough and sputum over the requisite timeframe for that diagnosis to be made. And those records are an exception to the hearsay rule because they're presumed to be honest and trustworthy. And there is no diagnosis of chronic bronchitis in the treatment records. Further, Dr. Rosenberg admitted that... In any of the treatment records? Not in the... There are, I think, and I can't remember who pointed this out, there are entries where this man did have complaint of cough. So it's not as if he just selectively, every time he went, I'm not going to mention cough or sputum. He complained to his doctor on occasion about it. But it was not with sufficient frequency for there to be the diagnosis of chronic bronchitis made. He had, as I think we all have... Well, I think the public counsel is saying that's your position, without the frequency to make the diagnosis. Well, the chronic bronchitis is a term of art. It's different than an acute bronchitis, which we can all experience and obviously which this gentleman experienced. But chronic bronchitis... Well, according to the treatment records that he relied upon, yes. Okay, so you're saying that a fair reading of the treatment records shows only acute bronchitis, not chronic. It definitely doesn't show chronic diagnosis. And the only way that would be sufficient to do that is to have repeated references, takedowns by a physician, assistant, LPN, somebody. Why are you here today, sir? The history that Dr. Cohen took from this gentleman was that he had cough every day since he was age 35. That's not in the records anyway. And they chose to... The history that Cohen took. The history that Cohen took. Is that a record? Oh, well, yeah. So there is a record there that says that by Dr. Cohen. I'm sorry. I misunderstood you. There's not a treatment record, and I think it's fair to say that Dr. Cohen's not a treater. No, he took a history from this gentleman of cough every... Actually, what he said was cough every morning since age 35. The commission found that not to be credible. They believe Dr. Rosenberg and his opinion is supported by what we have in the medical records, which is no diagnosis of chronic bronchitis. But Dr. Rosenberg also admitted that if you have bronchitis, dust can aggravate that condition. But that condition then will cease once that dust exposure ceases. And there's a dispute, again, as to that in the medical. But that's for the commission to decide. Have I answered your questions on manifest white? Because there is one other thing I want to talk about. I think that the... Again, this is a fact question. The record supports it. The medical supports it. The reason why I didn't have this gentleman examined is because the testing that was performed on him was absolutely normal. So there's nothing to be gained by me having that testing repeated. I guess I could just send him to a doctor to take a history from him and nothing else. But Dr. Cohen testified, he takes up their own complete history. And my doctor that reviewed all the evidence had that, plus the actual treatment records. So I didn't have him seen to repeat the testing. Because here's my question for you in this case. This gentleman complained of cough and sputum in the morning since age 35. Does that meet the definition of disability under the act? He gets up in the morning, he coughs, there's sputum, he goes to work. His spirometry was normal. It revealed no obstruction. His lung volumes were normal. It revealed no restriction. His diffusion capacity wasn't valid and Dr. Cohen explained why it was not valid. He didn't take a deep enough breath for the test to be valid. He underwent exercise testing. And he had a normal work capacity. In fact, I believe Dr. Cohen testified that he had the work capacity that you would expect of a normal, healthy, 64-year-old male. He in fact denied any shortness of breath with exertion to Dr. Cohen. So the other question here that we haven't talked about is getting up in the morning and coughing and bringing up some sputum. Is that disability under the act? Where is it? I mean, I think I was here before and we had a case where we argued where the gentleman's claim of disability was he had rhinitis. A runny nose. I mean, really. I don't want to make light of it and actually I have rhinitis right now. Is that disability? We'll save that for another day. Do you have any questions? I don't believe we do. Thank you, Counsel. Counsel, you may reply. Well, to paraphrase the sainted Senator Everett Dirksen, when I feel the heat, I see the light. I felt the heat here and it came back to me. At page 19 of Freeman's brief, page 19, I'm going to quote, the commission's decision does not necessarily indicate that the commission found Mr. Allen did not suffer from chronic bronchitis or a pulmonary condition, but rather the commission found that Mr. Allen did not prove his chronic bronchitis arose out of it in the course of the appointment. They were confused too, page 19. The arbitrator does not make it clear whether he found chronic bronchitis or not. And I'm saying he couldn't rule it out. Let me read a statement to you in the arbitrator's decision that was adopted by the commission. It's quote, Dr. Rosenberg testified that while Dr. Cohen outlined cough and sputum production, the treatment records did not outline same on a chronic basis, close quote. Then in the conclusions they say the arbitrator finds Dr. Meyer and Dr. Rosenberg to be more credible than Dr. Cohen. So aren't they finding then that they agree with Rosenberg that the treatment records did not show chronic bronchitis? I don't know. I'm sorry. I mean they talk about the black sputum, but just setting that aside for a minute, you know, they're saying we believe Rosenberg over Cohen and Rosenberg says the treatment records do not show chronic bronchitis. So they are making... I didn't mean to break in. I just decided when I have a thought. And the thought is, it's another confusion in the decision. They didn't say we believe Rosenberg over Cohen. They said we believe Meyer and Rosenberg over Cohen. Meyer's got it. So was it Meyer and Rosenberg over Cohen for chronic bronchitis? Or was it for pneumoconiosis? We'd be in trouble if we reversed every commission decision that all the parts to the puzzle didn't fit exactly right or that were confusing or whatever. It's only mine I want you to reverse. But another thing that was brought up here, and I think this is a very big thing, and I don't think it's your problem. I think it's the commission's problem. But it's been addressed here and it needs to come up. Why doesn't the respondent have people examined? I'll tell you why they don't. My man examines a guy, has spirometry, tests him, and then time passes before they get to it. What's going to happen that time? Could a normal spirometry turn abnormal? That's happened. Could an abnormal spirometry turn a lot worse? Well, if you're the company, you might say, well, I can do this spirometry. I can avoid Dr. Rosenberg talking to this guy and finding chronic bronchitis because it's not really all over these records. I just won't have him go there. Now, so I think that's probably a good reason that they might be doing that. Now, did they save money by not having an exam? Can they say, oh, gee, we didn't want to spend a lot of money on a waste of time? Rosenberg's in Cleveland. They go to Cleveland for the deposition. They don't save any money. And I think it's in his testimony that his medical records review costs as much or more than an exam. And as to does chronic cough qualify for disablement, does rhinitis qualify for disablement? Rhinitis may be a runny nose to Mr. Wirtz, but to a doctor it's a thickened mucosal lining that results in excess mucus. It's part of that shepherd's staff. It's the upper airways. It's the same mucosal lining that's in the sinuses. The same that's in chronic bronchitis. The same affected by them. And what it does is it turns you into a petri dish. Yes, it's a bad thing to have rhinitis. A bad thing to have chronic bronchitis or sinusitis because it's an impairment in the function of the body. That's that thickened mucosal lining. And also cough is not a natural state. It's telling you something's wrong. With all that in mind, and I appreciate the questions you had today, on my cases I think they warrant reversal. Thank you. Thank you, counsel. Both this argument and this matter will be taken under advisement and a written disposition shall issue the court will stand in recess until 1.30.